Summers, J.
The Scioto > Valley Traction Company owns and operates an interurban railway between the cities of Columbus and Chillicothe. The road passes through the city of Circ'leville, over certain streets. Permission to construct, maintain and operate the road over those streets was given by ordinance of the city in which it is provided, that cars shall not be run faster than ten miles per hour within the city limits; that an alarm by sounding a bell shall be given, when approaching a street crossing, to notify persons of danger; that the motorman, or some other employee, must be on the front platform of a car while in motion; that all cars, excepting special cars, shall stop at cross streets and at street intersections, and that the company shall carry any passenger from any point within the city to any other point within the city for a cash fare of five cents.
In 1905 the city passed an ordinance making it unlawful for any conductor of any electric interurban or street car, running upon any street in the city, to fail or refuse to stop the car at any street intersection, when signalled or requested so to do by any person desiring to board the car or to alight therefrom; and providing that upon conviction before the mayor he shall be fined not less than five dollars or be imprisoned not more than ten days or both.
*130 The plaintiff in error, a conductor in charge of one of said cars, was charged with wilfully failing and refusing to stop his car at a street intersection upon request of a passenger so to do, to allow him to alight therefrom. On trial to a jury before the mayor the conductor was found guilty and fined.
On error in the court of common pleas and in the circuit court the judgment was affirmed.
The judgment is attacked on the grounds, first, that the city was without authority to enact the ordinance; second, that the ordinance is unconstitutional in that it confers final jurisdiction upon the mayor, and third, that it is unconstitutional in that it attempts to confer exclusive jurisdiction upon the mayor to try misdemeanors.
Counsel for defendant in error contend that the easement, or so called franchise, that was granted, is for a street railway and that it is to be so considered in determining the questions presented. The grant does not appear to be made in conformity to the statutes relating to grants for street railways, however, we do not think it necessary to pass upon that contention, but shall consider the questions presented as relating to an interurban railway, for such the railway of the plaintiff in error is in fact, and so it is referred to in the penal ordinance and in the affidavit.
Whatever may be the rights and obligations of a railway company and of the city under the ordinance granting the easement, power in the city to enforce them by penal ordinances is not one of them. It may be the duty of the railway company, under its grant, to stop its cars at street inter *131 sections, but it does not follow that the city may imprison the conductor in charge of one of the cars for a failure so to do. The right of the city to regulate the operation of cars over the railway by penal ordinances depends upon the extent of the police power that is granted to it by the legislature. In Hayes v. Michigan Central Railroad Co., III U. S. 228, an ordinance, granting a right of way to a railroad company, and containing a provision requiring the railroad company to fence its track, is held to be not merely a con" tract, but an exercise of municipal legislation, but it is there pointed out that the requirement to fence is within the police power conferred upon the city.
Section 7 of the municipal code of 1902 (Section 1536-100, Revised Statutes), enumerates the general powers' conferred upon municipal corporations. Subdivision 9, of that section, is as follows:
“To regulate the use of carts, drays,' wagons, hackney coaches, omnibuses, automobiles, and every description of carriages kept for hire or livery stable purposes; and to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon; to prevent and punish fast driving or riding of animals, or fast driving or propelling of vehicles through the public highways; to regulate the transportation articles through such highways and to prevent and punish fast driving or riding of animals, or fast driving or propelling of vehicles through the public highways; to regulate the transportation of articles through such highways and to prevent injury to such highways from overloaded vehicles, *132 and to regulate the speed of interurban, traction and street railway cars within the corporation.”
It is said that the circuit court based its judgment in this case upon this statute, and in Lockyear v. Covert, 2 O. C. C. N. S., 389, it is held that this section authorizes the village council to pass an ordinance making it unlawful for any person in charge of an electric street car running upon any street in the village to fail or refuse to stop such car at any regular stopping place, when signalled so to do by persons desiring to board or alight from the car. It is said in the opinion that it was conceded upon the hearing that but for this last clause, authorizing councils “to regulate the speed of interurban, traction and street railway cars within the corporation,” the council would have authority, under the earlier part of the section, to pass the ordinance in question, and that it was contended that this last clause indicates that the authority was not previously given because the legislature by this clause expressly provides that the council may regulate the speed of these cars. The court was of the opinion that this last clause was intended to give power to regulate the speed on such company’s private right of way.
The ordinance in question does not purport to regulate the speed of cars. The purview of the last clause of subdivision 9, authorizing council to regulate speed of interurban, traction and street railway cars within the corporation, as well as the clause authorizing it “to prevent and punish fast driving or propelling of vehicles through the public highways” is the safety of persons, while *133 the purpose of the ordinance- is to require the cars to be stopped in order that passengers may get on or off, and in the absence of a signal it is not required that a car shall be stopped, but it is permitted to proceed without regard to- the safety of persons at street intersections. Counsel for defendant in error contend that under the ordinance granting the easement, it is the right of persons to be carried from any point in the city-to any other point in the city on the road and that the ordinance is designed to provide for the safety of such persons in getting on or off of the car. Such persons have no right to get on or off a moving car and the statute was not designed to enable councils to encourage them in the attempt.
The whole legislative power of the state is vested in the general assembly, the limitations upon its exercise are special, when, therefore, the power of the legislature to enact a given law is disputed, the question is, whether such exercise of the powers is clearly prohibited; but a municipal corporation has only such legislative power as is expressly granted or clearly implied and no other, and when, therefore, its power to enact a particular ordinance is disputed the question is, whether the power is expressly granted or is clearly implied. (Bloom v. City of Xenia, 32 Ohio St., 461; Ravenna v. Pennsylvania Co., 45 Ohio St., 118). We do not think the power in question is either expressly given or clearly implied either by this section or by Section 28 of the municipal code (Section 1536-131, Revised Statutes), providing that council shall have the care, supervision and control of *134 public highways and streets. 'The street railway is what its name signifies, a railway on a street to facilitate its use as a way for persons to pass from one point to another in the city, or through the city; but with the advent of electricity as a motive power the street railway was extended to the suburbs, and as a result' of development in its use it has been found practicable to operate cars for long distances, so that now we have the interurban railway, extending from city to city, over the streets and upon or along the highways. At first, it was regarded merely as an extension of the street railway, and in our legislation it was classed with street railways. Comparatively it is a new thing, but already it has overspread the state, so that now it is possible by that means to travel from Cleveland to Cincinnati and from Cincinnati to Toledo, and from Toledo to Cleveland, and its development is, to some extent, manifest in the legislation enacted from year to year. If every city and village through which such a railway passes may require its cars to be stopped at every street intersection to take on or to discharge passengers, and to serve the purposes of a street railway, then its usefulness as a means of interurban transportation may be very much limited, because so much time will be consumed in passing through cities and villages that it will no longer be practicable for many to travel. in that way. Councils may reasonably be expected to be actuated by considerations of local convenience rather than those of the public and in view of the importance of the subject, and its comparatively recent origin, it would seem *135 to be a matter for consideration by the legislature, and it is in view of these considerations that we reach the conclusion that the power has not been conferred by the general terms of Section 28.
The ordinance provides that any person in charge of a car who shall violate any of the-provisions of the ordinance shall, upon conviction thereof before the mayor, be fined in any sum not less than five dollars nor more than ten dollars or be imprisoned not more than ten days, or both.
If we apprehend counsel’s contention respecting the ordinance, it is that the ordinance is invalid because it attempts to confer upon the mayor the power to imprison without a trial by jury; and because it attempts to limit jurisdiction to hear complaints for violations of the ordinance to the mayor of the citjq excluding justices of the- peace of the county who have, by Section 610, Revised Statutes, jurisdiction throughout the county in which they are elected to inquire into complaints for commissions of misdemeanors, violations of ordinances being misdemeanors under subdivision 29 of Section 7 of the municipal code (Section 1536-100, subdivision 29, Revised Statutes), which reads, “To make the violations of ordinances a misdemeanor, and to provide for the punishment thereof by fine or imprisonment.”
The words, “upon conviction before the mayor” do not prescribe the manner of conviction. The ordinance merely provides what the penalty shall be when there is a conviction.
Section 1819, Revised Statutes, is as follows: “If the charge is the violation of an ordinance in a matter with respect to which imprisonment *136 may be a part of the punishment, and the accused does not waive a jury, the mayor shall, nevertheless, impanel a jury, and try the case on the affidavit, in the same manner, and with like effect, as misdemeanors are tried in the court of common pleas on indictment.” Section 1839, Revised Statutes, authorizes the council of any city or village to prescribe by ordinance for summoning and impanelling juries.
Section 6795, Revised Statutes, defines misdemeanors as folows: “Offenses which may be punished by death, or by imprisonment in the penitentiary, are felonies; all other offenses are misdemeanors,” and Section 610, Revised Statutes, provides that a justice of the peace shall have jurisdiction of misdemeanors throughout the county in which he was elected. Section 7, subdivision 29 of the municipal code, supra, provides that the council may make the violation of ordinances a misdemeanor and the contention is that the effect of this is to give to justices of the peace jurisdiction of complaints for the violation of the ordinance. Prior to the adoption of the municipal code in 1902, Section 1861, Revised Statutes, provided, “By-laws and ordinances of municipal corporations may be enforced by the imposition of fines, forfeitures, and penalties, on any person offending against any such by-law or ordinance.” It did not provide that council may declare the violation of the ordinance a misdemeanor and so there was no claim that a justice of the peace had jurisdiction of complaints for the violations of penal ordinances, excepting by statute in townships in which a hamlet was situated. How *137 ever, such violations were then just as much misdemeanors as they now are, and a justice of the peace now has no better claim to jurisdiction than he then had. The statutory definition was originally adopted as a part of the code of criminal procedure and it comprises only violations of statutes. And if we are to stick in the bark, the statute does not require the city to make the violation of an ordinance a misdemeanor and the ordinance in question does not declare a violation of its provisions to be a misdemeanor.

Judgment reversed.

Si-iauck, C. J., Crew, and Davis, JJ., concur. Spear, J., not participating.